Name:_____
Date:_____

## INTERVIEWER'S   STANDARD QUESTIONS

1.     Why are you interested in a position with Bayer, and what do you know about our company?

2.     Why did you choose your particular field of work?

3.     Why are your interested in making a change? Job History?   Why did you leave?

4.     What qualifications do you possess that makes you the ideal candidate for this position?

5.   What are your future plans?

6.     What would your former employer say about your attendance, strengths and weaknesses?

7.     If you were to capsulize a recommendation from your previous employers, what would it be?

8.     What do you think determines a person's progress in a good company?

9.     What personal characteristics are necessary for success in your chosen field?

10.   Do you prefer working with others or by yourself?

11.   What types of people rub you the wrong way?

12.   How would you describe your idea of the ideal supervisor?

13.   If you are working on a project with a deadline how would you go about avoiding interruptions?

U:DATA\WORDDOCS\CAROL

BAYER/ROGUS 000130

C:\My Documents\Intrvstd.doc

DEFENDANT'S
EXHIBIT
21
PENGAD-Bayonne, N. J.

1. Why are you interested in a position with Bayer and what do you know about our company?

2. Why did you choose your particular field of work?

3. Why are your interested in making a change? Job History? Why did you leave?

4. What qualifications do you possess that makes you the ideal candidate for this position?

5. What are your future plans?

6. What would your former employer say about your attendance, strengths and weaknesses?

7. If you were to capsulize a recommendation from your previous employers, what would it be?
   *I believe she will say, I am a hard worker, I am a big asset to the company. She will recommend me for this position.*

8. What do you think determines a person's progress in a good company?

9. What personal characteristics are necessary for success in your chosen field?

10. Do you prefer working with others or by yourself?

11. What types of people rub you the wrong way?

12. How would you describe your idea of the ideal supervisor?

13. If you are working on a project with a deadline how would you go about avoiding interruptions?

U:DATA\WORDDOCS\CAROL

BAYER/ROGUS 000133

**Hsiu-Chin Chen**
**82 Overbrook Road**
**West Hartford. CT 06107**
**(860) 561-9679**
Email: 錯誤! 尚未定義書籤。

**Objective:**

To obtain a challenging position that utilizes abilities developed through my skills and experience and also provides for the opportunity to learn and advance with the organization.

**Summary of Qualifications:**

- Ability to work independently, team oriented and fit in and work well with people at all levels.
- Have demonstrated excellent attention to detail, organization and management,
- Ability to work under pressure and to handle multiple tasks.

**Employment Experience:**

October 1996 to present: CT    **Sodexho/Marriott   Management Services**, Hartford,

*Cashier,Caterer*
- Receive cash and balance the register at end of the day.
- provide large private dining room meeting/party catering service.

May 1993 to Sept. 1996:    **Gardner Merchant**, Hartford, CT
*Inventory Control, Cashier*

- Responsible for ordering , receiving, and inventory control. Organized stock room as need and assisted month-end physical inventory    and reconciled all discrepancies, prepared monthly inventory report for management.
- Balanced the register and prepared daily cash receipts report.

**DEFENDANT'S EXHIBIT**
**22**
PENGAD-Bayonne, N. J.

BAYER/ROGUS 000126

May 1986 to 1988         **Magness Consulting Services**, Taiwan
*Accountant, Executive Secretary*

- Performed various accounting functions which involve client billing, accounts receivable.

- Performed secretarial functions for Executive Director. Prepared records, notices, minutes and other board related correspondence. Arranged programs, events meeting/conference schedules with the clients and other professional staff.

January 1980 to 1986       **Jatai Glass Inc.**, Taiwan
*Accountant, Executive Secretary*

- Performed various accounting functions which involve sales quote, ordering, inventory control, accounts receivable, accounts payable, payroll, trail balance and general ledger, financial reports preparation.
- Performed secretarial functions for the owner. Arranged client meeting, contact. Prepared records, memos, reports.

**Education:**

Shu Kuang Girl's High School, Majoring in Accounting

**Reference:**         Available upon request

BAYER/ROGUS 000127

Received Fax :          FEB 05 2003 11:5?         Fax Station :  LAW OFFICES          p.  46
02/05/2003   12:00     8602769632

# Rogus

| | |
|---|---|
| **From:** | Rogus [rogus@erols.com] |
| **Sent:** | Tuesday, November 16, 1999 9:38 PM |
| **To:** | '=?big5?B?tF621LRm?=' |
| **Subject:** | RE: resume requested |

Chin,

I made a few modifications to your resume.  I moved the experiences in Taiwan to the top becasue they are more related to the job you are applying for.

I also changed the Girl's High School to Commercial High School.

I added Computer skills in the Strengths (I changed "Summary of Qualification" to Strengths) section.  Please add any application that you know.

Did you ever take any courses in Accounting or Bookkeeping during the past few years?  I thought you said a while ago that you were taking some courses.  If yes, put it on the resume.  It will be helpful.

I think your resume looks very good.  Good luck.

Mei



Hsiuresume

| | |
|---|---|
| **From:** | =?big5?B?tF621LRm?= [SMTP:chenpy@worldnet.att.net] |
| **Sent:** | Tuesday, November 16, 1999 8:20 PM |
| **To:** | rogus@erols.com |
| **Subject:** | resume requested |

<<File: ATT00001.txt>><<File: ATT00002.htm>><<File: Hsiuresume.doc>>



DEFENDANT'S
EXHIBIT
23

000341

Received Fax :        FEB 05 2003 11:59AM     Fax Station : LAW OFFICES         P. 47
02/05/2003   12:00     8602769632                                        PAGE   47

).6

**Hsiu-Chin Chen**
**82 Overbrook Road**
**West Hartford. CT 06107**
**(860) 561-9679**
**Email: chenpy@worldnet.att.net**

**Objective:**

To obtain a challenging position that utilizes my skills and abilities developed through practical experience, and that provides for the opportunity to learn and advance within the organization.

**Strengths:**

- Ability to work independently in a team work environment,
- Work well with people at all levels,
- Excellent attention to detail,
- Strong organizational and managerial skills,
- Ability to work under pressure and to handle multiple tasks,
- Computer skills: Excel, Word, etc.

**Employment Experience**

January 1980 to 1986      **Jatai Glass Inc., Taiwan**
                          *Accountant, Executive Secretary*

- Performed various accounting functions which involve sales quote, ordering, inventory control. accounts receivable, accounts payable, payroll, journal entry, general ledger, balance and financial report preparation.
- Performed secretarial functions for the owner. Arranged client meeting, contact. Prepared records, memos, reports.

May 1986 to 1988          **Magness Consulting Services, Taiwan**
                          *Accountant, Executive Secretary*

- Performed various accounting functions which involve client billing, accounts receivable.

- Performed secretarial

000345

7.8

functions for Executive Director. Prepared records, notices, minutes and other board related correspondence. Arranged programs, events meeting/conference schedules with the clients and other professional staff....

**May 1993 to Sept. 1996:**   **Gardner Merchant**, Hartford, CT
*Inventory Control, Cashier*

■                          Responsible for ordering , receiving, and inventory control. Organized stock room as needed and assisted month-end physical inventory and reconciled all discrepancies, prepared monthly inventory report for management.
■                          Balanced the register and prepared daily cash receipts report.

**October 1996 to present:**   **Sodexho/Marriott Management Services**, Hartford,
CT

*Cashier, Caterer*
■                          Receive cash and balance the register at end of the day.
■                          provide large private dining room meeting/party catering service.

**Education:**

Shu Kuang Commercial High School, Major in Accounting

**Reference:**          Available upon request

000346

具 1 - 1

*lcvd from Chin 5/29*

| 寄信 | Mei Rogus <Mei.Rogus.B@bayer.com> |
| 收信 | - *CHENPY@WORLDNET.ATT.NET <CHENPY@WORLDNET.ATT.NET> |
| 日期 | 1999年1月16日PM 05:52 |
| 主旨 | HR manager e-mail address |

Donald Telesca
Human Resources Manager
Bayer Corporation
245 New Park Drive
Berlin, CT 06037

Phone: (860) 828-2311
Fax: (860) 828-2302

E-Mail: donald.telesca.b@bayer.com

DEFENDANT'S
EXHIBIT
24

BAYER/ROGUS 000046

2001/5/18

| | |
|---|---|
| **From:** | Kuang-Yung Chen [Kuang-Yung.Chen.B@bayer.com] |
| **Sent:** | Wednesday, November 17, 1999 10:48 AM |
| **To:** |     -    \*rogus@erols.com |
| **Cc:** |     -    \*CHENPY@worldnet.att.net |
| **Subject:** | Final one |



Hsuresu-final.doc

**DEFENDANT'S EXHIBIT**

25

PENGAD-Bayonne, N.J.

000248

1

**Hsiu-Chin Chen**
37 Overbrook Road
West Hartford, CT 06107
(860) 561-9679
Email: 錯誤! 尚未定義書籤。

**Objective**

To obtain a challenging position that utilizes my skills and abilities developed through the professional experience, and that provides the opportunity to learn and advance within the organization.

**Strengths**

- Ability to work independently in a team work environment.
- Work well with people at all levels.
- Excellent attention to details,
- Strong organizational and managerial skills.
- Ability to work under pressure and to handle multiple tasks.
- Computer skills: Microsoft e-mail, Excel, Word, Powerpoint, Lotus Notes.

**Employment Experience**

1980 - 1986      **Jatai Glass Inc.**, Taiwan
*Accountant, Executive Secretary*

- Performed various accounting functions which involve in sales quote, ordering, inventory control, accounts receivable, accounts payable, payroll, journal entry, general ledger, balance and financial report preparation.
- Performed secretarial functions for CEO.   Arranged the meeting and client contact. Prepared records, memos, and reports.

1986 - 1988      **Magness Consulting Services**, Taiwan
*Accountant, Executive Secretary*

- Performed various accounting functions including client billing, and accounts receivable.
- Performed secretarial functions for Executive Director.   Prepared records, notices, minutes and other board related correspondence.   Arranged schedule for programs, events meeting/conference with the clients and other professional staff.

1993 - 1996      **Gardner Merchant**, Hartford, CT
*Inventory Control, Cashier*

- Responsible for ordering, receiving, and inventory control.   Organized stock room as needed and assisted month-end physical inventory and reconciled all discrepancies, prepared monthly inventory report for management.
- Balanced the register and prepared the daily report of cash receipts.

1996 – Present    **Sodexho/Marriott   Management Services**, Hartford, CT
*Cashier, Caterer*

- Receive cash and balance the register at end of the day.
- Provide large private dining room meeting/party catering service.

**Education**

Shu Kuang Commercial High School, Major in Accounting

**Reference**        Available upon request

## Rogus

| | |
|---|---|
| **From:** | Rogus [rogus@erols.com] |
| **Sent:** | Sunday, December 05, 1999 7:08 PM |
| **To:** | 'Chin Chen' |
| **Subject:** | RE: Thank you note |

Chin,

I made some minor changes - such as comma (,), period (.), capital letter to lower case and organize the paragraph, etc. How about giving Cidy's name and phone numbers in the thank you note for further reference?  Did you forget about it or did you decide not to use her as a reference?

Good luck!
Mei

Chin.Thank you note

DEFENDANT'S
EXHIBIT

26

1

000349

Chin Thank you note

Dear Ms. Rogus:

Thank you very much for the interview regarding the position of accountant with Bayer corporation. I enjoyed meeting with you and learning more about the job responsibilities of this position.

I am very excited about the opportunity to obtain a job as an accountant. It is my goal to get back to the accounting field because it is a profession that I enjoyed working in for 8 years in Taiwan.

I believe my education, experience and skills meet the requirements of the position. I am a dedicated person and a good team player. I always take my job seriously. I have confidence to handle this job very well. I am sure that I can make an immediate contribution to your organization.

Thank you for your time and consideration. Please feel free to contact me if you need more information.

Sincerely,
Chin Chen

Page 1

000350

## Rogus

**From:**      Kuang-Yung Chen [Kuang-Yung.Chen.B@bayer.com]
**Sent:**      Tuesday, December 07, 1999 11:42 AM
**To:**          '      *rogus@erols.com
**Subject:**   fyi

*b.1*

Mac,

I hope that you did receive the attached message.

Finally, it's done. Thanks a lot ... for providing a career opportunity to
Chin.    Cliff
---------------------- Forwarded by Kuang-Yung Chen/WESTH/PH/US/BAYER on
12/07/99 11:25 AM --------------------------


Bayer News
12/06/99 10:44 PM
Sent by: WH-Broadcast Messages
To:
cc:

Subject: Corporate Policy on Harassment

We take this opportunity to remind you of Bayer Corporation's policy
prohibiting harassment. If you haven't taken the time to read the following
policy posting, please do so now. Should you have any questions regarding this
policy or wish to report a violation, contact your immediate supervisor, or
division or facility human resources representative, or the Central EEO Unit in
Pittsburgh. You may also contact the Corporate Ombudsman if the situation
dictates particular sensitivity.

HARASSMENT POLICY - - NOTICE TO ALL EMPLOYEES

Policy:

Harassment of another employee because of that person's race, color, sex,
religion, age,
disability, veteran status, or national origin is a violation of Federal law
protecting employees from
discrimination. State and Local statutes may provide additional harassment
prohibitions.
Harassment also violates Company policy and is strictly prohibited. Violators
are subject to
immediate discipline which may include discharge.

What is prohibited?

While any harassment of another employee is inappropriate, this notice deals
with harassment which violates the legal rights of the victim. Illegal
harassment may include remarks, gestures, jokes, or comments relating to the
age, ethnic or racial background, or religion of another employee.

Sexual harassment is a form of illegal harassment. It is defined as any
behavior that is judged to be unwelcome using a reasonable standard of
conduct. These behaviors include, but are not limited to: deliberate and/or
repeated comments, gestures, or physical contact of a sexual nature, requests
for sexual favors, implicit or explicit coercive sexual behavior which has the
impact of controlling or influencing an individual's career, salary, working
conditions or job. Other examples of unwelcome conduct may include sexually
suggestive comments, innuendoes, witticisms, or jokes. The totality of

1

PENGAD-Bayonne, N. J.

**DEFENDANT'S
EXHIBIT**

27

000298

circumstances and pervasiveness of the conduct or behavior will also considered.

What should you do about it?

If you believe that you are being harassed in violation of this policy, immediately notify your supervisor, Human Resources Representative, the Central EEO Unit, or the Corporate Ombudsman HOTLINE (1-800-838-2270).

What will happen if you report harassment?

Your report will be investigated promptly. The investigation will be kept as confidential as possible, consistent with the need to determine the facts. It is unlawful to retaliate against an employee for filing a complaint for sexual harassment. If an investigation confirms a violation of this policy, appropriate corrective and remedial action will be taken immediately to end the harassment and to discipline the violator, from counseling up to immediate discharge. This policy applies to all employees, vendors, contractors, customers and visitors.

Help us to help you!

We all need to increase our sensitivity to situations which offend others. If you hear someone
make a thoughtless remark or tell an insensitive joke, or if you observe other conduct which may constitute harassment, help that person by reminding him or her of this policy, even if you personally are not offended. By working together, we can and will improve the workplace environment for everyone.


Helge H. Wehmeier

6.2

2

000299



PLASTICS DIVISION
FILM
BUSINESS
BERLIN CT

**Internal Memoranda**                                    ACCOUNTING DEPT.


**To:**          Chin Chen

**From:**        M. Rogus

**Date:**        May 11th, 2001  *Friday.*

<u>**Subject:**</u>        <u>Corrective action plan</u>


The following is a list of errors/problems that have been repeating on a daily, weekly and monthly basis since you have assumed the position.

1. Repeated questions about "invalid product codes",
2. Do not understand trial product inventory procedures,
3. Inability to communicate,
4. Inability to follow instruction,
5. Process Formula errors,
6. Not able to complete balancing of ACTG8001 report by –D2,
7. Unable to solve problems,
8. Poor computer skills,
9. Error numbers on reports,
10. Wrong entry without correction,
11. Do not understand Bayer accounting system (inventory and costing)
12. Not responding to requests/questions.

It requires immediate improvement on the above listed issues/problems.

DEFENDANT'S
EXHIBIT
28

PENGAD-Bayonne, N. J.

- New product codes need to be set up; unable to contact proper personnel to get it set up immediately.
- Unable to reply to e-mail questions – rely on me to solve the problem, very ineffective especially when I am traveling.
-

8. Poor computer skills,
   - After more than a year on the job, still using calculator to get total numbers and type in Excel spreadsheets, sill didn't know how to insert/delete cells/rows/columns, etc.
   - When I asked her to attend the Excel beginner's training again recently, I told her that I was very disappointed how little computer knowledge she has and how slow her computer skill has improved during the past years. She admitted that she has misled me on her resume and during the interview about her computer skills. She actually never had experience with computer before.

9. Error numbers on reports
- Scrap report -- highlighted the numbers for her to enter to Excel, entered wrong numbers,
- Write-off report -- did only one worksheet, not the other (which she has been doing for a year)
- Silo delivery log – missing colored and imported materials

10. Wrong entry without correction
- CR PSG
- PF

11. Do not understand Bayer accounting system (inventory and costing)
- Production/Consumption
- PF
- Costing – impact of her entry – especially errors without correction
- Different warehouse system – Berlin, JFJ, C&M
- Masking inventory – B&K vs. Bayer
- Toll Conversion
- Trial vs. sample vs. production
- Actual vs. standard (Mike C. crew report)

12. Not responding to requests/questions
- Asked her to keep us notified when material write-off is done – Never did. JMR called asking if it's done, I thought not – but she couldn't find it in system. I checked the transaction in system, was done by CC. Again, Chin never gets back to us.

May 25, 2001

Conversation with Chin-Hsiu Chen, Rich Fuhrman, Denise Church-Ball and Mei Rogus

The meeting began by letting both Mei and Chin know that our goal after this meeting was to be able to have Chin get the help she needs to do her job better, and if Mei needed our help in finding training or resources for Chin, then we could try to help her in that area.

We asked Mei to go over some of the areas of concern that she had with Chin. When she stated to go over these areas, Chin admitted that when she first started at Bayer for about the first ½ of the year she was having problems doing her job. She felt that she needed Mei to help her in certain areas, and that Mei was not able to help her. Chin stated that Mei would get angry with her and tell her " I am not going to help you anymore" and walk away from Chin. Chin felt as though this was not right and that Mei should try to help her with some of the problems that she was facing. Chin said that Mei "hurt her feelings". Chin said that most of what she has learned she has had to do so by herself. She says that she is able to face her weaknesses, but that she could not deal with Mei's treatment of her. She told Mei that she puts walls up around herself, so that Chin felt as though she could not go to her with any problems.

Mei then asked Chin to explain when she had "poked" her. Chin said it was after everybody had gone home, she came over to her, and poked her and told her that "she was the inventory clerk, and she needed to fix the problems". Then another time, she said Mei "poked" her head and said "figure it out". Mei denied touching Chin. She said the gets frustrated with her, but that she would not touch her.

Then Mei spoke about Chin not having any computer skills and that when she was hired; she was not honest with Mei. Chin became very upset, started crying and said that she did tell Mei everything about her skills before she was hired. She also said that she could not believe that Mei would say that, when Chin did tell her.

Because Chin was so upset, I asked Chin to come to my office so that we could talk and the meeting ended.

DEFENDANT'S
EXHIBIT
29

000221

May 25, 2001

Today Rich Fuhrman, Mei Rogus and Denise Church-Ball sat down to address some concerns that were expressed to Rich from Chin-Hsiu Chen about the way she has been being treated by Mei, her Supervisor.

Mei said that Chin has worked for her for 1-½ years and that Mei was disappointed with Chin's performance and found her to be incompetent. Mei stated that she has spoke to Chin on several occasions and has asked Chin "what can I do to help you", and has asked Chin to let her know "what can I do to help you".

Mei said that she gave Chen a letter outlining some areas that she needed to improve in. Mei felt as though she had been doing everything she could to help Chin out, and she had not seen any results.

When Rich asked Mei why she would have done this without conferring with Rich first, Mei stated that this was not something that would be used against Chin, for disciplinary reasons but a way for Mei to help Chin by putting the information in writing and not telling her verbally.

When Rich asked if Mei has ever "poked" Chin she said "no". She stated that she has pointed at Chin but has never had any physical contact with her. Mei stated that she has been very frustrated with Chen lately and that she has no patience with her, especially around month-end closing, and that is why she "pointed" at her.

Mei states that Chin is making lots of mistakes.

Mei stated that when Chen comes to her with a problem, she tells her to go back and refer to her notes and figure it out. Mei feels as though this is the only way that Chen is going to learn. If Mei was to tell her how to fix the problem, then Chen would not learn from her mistakes.

When Mei gave Chin the letter, Mei states that Chin thanked her and told her what a good supervisor she was by doing this.

Rich explained to Mei that we were going to need to talk to Chin, because what Chin had told us was totally different from what Mei had said. Mei stated that the accusation of her "poking" Chin was serious, and that she would like for all of us to sit down and have an "open and honest conversation".

When we asked Mei to list some areas that Chin needed to improve in she gave us the folloiwng:

- Reports – Check them to make sure there are no errors before giving them to Mei
- Be better about communicating to other departments in writing and verbally
- Mei feels that there are times when Chin knows that there are problems, and does not give feedback or communicate this inforamtion to the appropriate people

DEFENDANT'S
EXHIBIT
30

| | |
|---|---|
| **From:** | Rogus [rogus@erols.com] |
| **Sent:** | Thursday, June 28, 2001 11:28 AM |
| **To:** | 'tim.romps.b@bayer.com'; 'ray.newhouse.b@bayer.com' |

Tim:

You contacted me 2-3 months ago regarding a production employee's concern that the management might be reporting inaccurate numbers. I have recently discovered the reason for the large variance (physical inventory vs. book value) of resin RM at each month end. A large amount of scrap material was not recorded on daily production report. Production "yield" has been the biggest focus of the film business. Yield number impacts everyone's performance and productivity plus$ results - from production to management.

In the past, the variance has been written-off without impacting the yield because we could not identify the cause. I believe I now have confirmed the real cause. The variance should have been consumed to finished goods which would lower the yield numbers substantially. I presented the findings to Rich in the beginning of June and recommended to balance the RM the proper way - even if it would lower the yield numbers significantly. He was very reluctant to give me permission to use this procedure.

On June 8th, Rich suspended me based on a false accusation from one of my staff who had a performance problem. This employee had admitted to me in April and May that she had misled me about her computer skills while applying for the job. To my surprise, Rich said she claimed that I had instructed her to lie on her application because I had helped her with her resume. She had asked me to proof read and correct her resume which I did base on what she told me. I have NEVER instructed her to lie on her resume. I am a highly ethical person and would not tolerate this kind of falsification. This employee wanted and needed this job so bad that she had lied in the beginning to get the job, and now she lied again to keep her job.

Rich discharged me on the 13th without proper investigation with regard to this incident. I was never given an opportunity to defend the false accusations. Rich did not like me contacting you last time and told me not to contact you if any disagreement happened again. I have requested information on Bayer's alternative dispute resolution, but still have not received it. The timing of my discovering the real cause of the RM discrepancies and my unjust termination was very suspicious.

I am including Ray in this e-mail because Ray was my functional supervisor. Ray would understand the proper accounting procedure of handling the RM variance.

I sincerely hope both of you could review this case objectively. I loved my job at Bayer and I enjoyed working with people there. I believe I have been a valuable asset to the company. I always tried to do the right things for the company which sometimes may not be the best interest of my supervisor and his superior.

I will follow up this e-mail with a phone call to you to discuss this matter in detail, or you may reach me at (860) 276-8536. Thank you for your attention.

Sincerely,

Mei Rogus

**DEFENDANT'S EXHIBIT**

36

PENGAD-Bayonne, N. J.

000220

1

June 8, 2001

Meeting with Mei Rogus, Rich Fuhrman and Denise Church-Ball

The meeting started at 3:00 p.m. on Friday, June 8, 2001.
The purpose of the meeting was to find out about some concerns that were raised by an employee regarding her qualifications for the position that she was hired for.

Previous to this meeting on Friday, May 25, 2001 Mei Rogus, Rich Fuhrman, Chin-Hsiu Chen and Denise Church-Ball met to discuss some issues that were raised by Mei regarding Chin's performance.

During the meeting Mei stated that Chin was having some problems and Mei said that they were related to her computer skills. Agreed on several actions to help Chin's performance. Mei then told Chin that Chin had not been truthful when she was hired. Mei told Chin that she had lied about her computer experience. Chin got very upset and Denise and Chin left the meeting.

On Tuesday, May 29, 2001, Chin talked to Rich and said she didn't lie and showed him an e-mail from Mei stating Mei had added computer skills to Strengths and changed school. Chin had sent the resume to Mei, and Mei had added computer experience and made some other changes to Chin's resume.
Chin stated emphatically that she told Mei she was not good with a computer and Mei said don't worry about it. Rich asked Chin to bring her original and revised resume, which she did the next day.

Rich:    At the time of recruiting for the position of Accountant I did you make any changes or recommend making changes to any candidate's resume?

Mei:  I do not know what you are talking about, please explain.

Rich:  Repeated question.

Mei:  I may have made some changes in grammar or language because of chin's difficulty with English.

DEFENDANT'S
EXHIBIT
31

000224

Rich: Did you make any substantive changes?

Mei: No, not that I can remember

Rich: I have some information that contradicts what you are saying.

At that time Rich mentioned Chin's resume, and Mei said that she had
shared some information relating to this position with somebody at West
Haven who was going to help Mei with the job posting, but that was the only
person that Mei shared any information with. Mei said that this person in
West Haven was a mutual friend of hers and Chin's and that they may have
helped Chin with her resume.

When Rich asked Mei if she had helped Chin, she said that she may have
made some grammatical changes, but that was it.

Mei also mentioned that the candidate for the job did not need to be
proficient in computers, but needed to have some experience. That is a
contradiction of what the posting stated.

Mei kept referring to somebody at West Haven that had worked with Chin
on putting here resume together. Denise asked if Mei wanted to give us the
person from West Haven's name and Mei said "No".

Mei said that Rich and I were not listening to her side. Rich and Denise
asked Mei a few times to tell us her side, but she did not. Mei said that we
should be talking about Chin's incompetence and not about her. We asked
Mei again if she would like to tell us anything, but the only thing that she
said is that Rich and I were not listening to her when it came to Chin's
performance.

Rich: We are investigating concerns that we received and need to complete
an investigation. During the investigation Mei was told that she should not
report to work, or have any contact with anybody here at Berlin.
She was going to be on a paid suspension.

Mei: Can I call the person in West Haven?

Denise: I told Mei that she should not be talking to anybody at West Haven,
and that if she wanted to give us the name of the person, and felt this

information would help with the investigation then Mei could tell us, and we would follow-up with them.

Mei: No, she does not want to tell us the person's name

Mei: I am not being treated fairly and wants to have her side of the story heard. Also what are the consequences to her pending the investigation.

We told her that we could not give her any information until the investigation was complete. Mei asked when we would know. We told her that we would get back to her as soon as we can.

The meeting ended at approximately 3:30 p.m. and Denise followed Mei back to her office to gather any personal belongings.

Then Denise escorted Mei to the lobby where she left the building at 3:50 p.m.

000226

Statement Taken By Jimmy James

# FACT FINDING REPORT

PAGE #:

| SOCIAL SECURITY NUMBER | CLAIMANT'S NAME | FIRST AFFECTED WEEK | BRI DATE |
|---|---|---|---|
| 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 | Rogus, Mei | 06/23/2001 | 06/18/2001 |

| ISSUE(S) | ELEMENT OF CONTROVERSY |
|---|---|
| Separation | Wilful Misconduct |

| EMPLOYER REG# | EMPLOYER AT ISSUE | SEPARATION REASON | LAST DAY OF WORK |
|---|---|---|---|
| 92-615-07 | Bayer Corporation | Discharge | 06/08/2001 |

## CLAIMANT STATEMENT

| OCCUPATION | YRS EXP | HRS/WEEK | SHIFT | WORK WEEK (F/T OR P/T) | RATE OF PAY |
|---|---|---|---|---|---|
| Plant Controller | 26 mo | 40 | 1st | Full-Time | $72,000.00 y |

| START DATE | SEPARATION DATE | HEALTH RESTRICTION(S) TO WORK | STUDENT | AGE | SEX |
|---|---|---|---|---|---|
| 04/05/1999 | 06/13/2001 | None | No | 39 | F |

| PRIOR OR SUBSEQUENT EMPLOYER AT ISSUE | SEPARATION REASON | EMPLOYMENT PERIOD | |
|---|---|---|---|
| | | | TO |

| OCCUPATION | YRS EXP | HRS/WEEK | SHIFT | WORK WEEK (F/T OR P/T) | RATE OF PAY |
|---|---|---|---|---|---|
| | | | | | |

| 10X SINCE PRIOR EMPLOYMENT ? | IF YES, LIST EARNINGS | & | EMPLOYER NAME WHERE 10X MADE | IF NO |
|---|---|---|---|---|
| | | | | |

I was discharged from Bayer Corporation on June 13, 2001, after a member of my staff made a false accusation against me. I was the Plant Controller for the employer and performed in the position 26 months. I was placed on suspension by the employer on June 8, 2001, because of the false accusation made by the employee and was discharged on June 13, 2001.

In April of 2001, I was doing a performance review on an employee because she was unable to perform in the position I hired her for. I made the employee aware that this was a progressive disciplinary process. During our meeting the employee informed me she was not totally truthful on her resume is why she could not do her job adequately. I told the employee her performance would be monitored and she needed to improve.

In May of 2001, the employee still had not improved so I gave her a written statement advising her of the areas she needed improve. I asked her to come up with a corrective action plan to help her improve. It was my intent to help her improve so she would maintain her job. I made my supervisor aware of my actions with this employee.

On June 8, 2001, my immediate supervisor told me we would get together to discuss the employee performance. During our meeting my supervisor told me this employee told him I had told her to lie on her resume so she could get the job. I was placed on suspension until he could investigate her accusations. I never told this employee to lie on her application. I did help her put her resume together, because she is Chinese as I and her English is not good. Again, I did not tell her to put false information on her resume to get the job. I tried to explain to my supervisor that I did not tell this employee to include false information in her resume. I told my supervisor that I believed the

I HAVE READ THE ABOVE SUMMARY OF MY ORAL STATEMENT AND I HEREBY ATTEST THAT THE FACTS ARE TRUE AND CORRECT. I UNDERSTAND THAT A COPY OF THIS STATEMENT MAY BE GIVEN TO ANY INTERESTED PARTIES UPON REQUEST. IF MY CLAIM FOR UNEMPLOYMENT COMPENSATION BENEFITS IS APPROVED, I UNDERSTAND THE DECISION COULD BE REVERSED BY A HIGHER AUTHORITY, AND I AGREE TO REPAY ANY AMOUNTS TO WHICH IT IS DETERMINED I AM NOT ELIGIBLE.

DATE TAKEN    06/28/2001    CLAIMANT'S SIGNATURE

DEFENDANT'S
EXHIBIT
38

000189

*Statement Taken By Jimmy James*

# FACT FINDING REPORT

PAGE #:

| SOCIAL SECURITY NUMBER | CLAIMANT'S NAME | FIRST AFFECTED WEEK | BBI DATE |
|---|---|---|---|
| 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 | Rogus, Mei | 06/23/2001 | 06/18/2001 |

| ISSUE(S) | ELEMENT OF CONTROVERSY | | |
|---|---|---|---|
| Separation | Wilful Misconduct | | |

| EMPLOYER REG# | EMPLOYER AT ISSUE | SEPARATION REASON | LAST DAY OF WORK |
|---|---|---|---|
| 92-615-07 | Bayer Corporation | Discharge | 06/08/2001 |

information she provided to me was correct. So she lied to me also. However, he did not believe me and I was discharged.

On June 13, 2001, I was called by my supervisor at home and told I was being discharged because of the employee's accusations. The employee that falsified her resume was not discharged. I was not warned for any acts of misconduct to cause my discharge. I did not knowingly violate a company rule or policy to cause my discharge.

**000190**

I HAVE READ THE ABOVE SUMMARY OF MY ORAL STATEMENT AND I HEREBY ATTEST THAT THE FACTS ARE TRUE AND CORRECT. I UNDERSTAND THAT A COPY OF THIS STATEMENT MAY BE GIVEN TO ANY INTERESTED PARTIES UPON REQUEST. IF MY CLAIM FOR UNEMPLOYMENT COMPENSATION BENEFITS IS APPROVED, I UNDERSTAND THE DECISION COULD BE REVERSED BY A HIGHER AUTHORITY, AND I AGREE TO REPAY ANY AMOUNTS TO WHICH IT IS DETERMINED I AM NOT ELIGIBLE.

DATE TAKEN    06/28/2001    CLAIMANT'S SIGNATURE

## STATE OF CONNECTICUT

## COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Mei Rogus,
      Complainant

Case No.: _____

v.

Bayer Corporation, Plastics Division
      Respondent

August 13, 2001

### AFFIDAVIT OF MEI ROGUS

My name is Mei Rogus and I reside at 476 Pleasant Street, Southington, Connecticut, 06489.  The Respondent is Bayer Corporation whose local address is 245 New Park Drive, Berlin, Connecticut 06037.  Respondent employs over thousands of people world wide.

I believe that Respondent has retaliated against me in terminating my employment because of my having previously complained of and opposed discriminatory and harassing behavior directed at me because of my sex.  I believe that Respondent has violated General Statutes 46a-60 (4), 46a-60(1) and the Civil Rights Act of 1964, as amended, 42. U.S.C. 2000e, and the Civil Rights Act of 1991.  I provide the following particulars:

1.  I began to work for the Bayer Corporation on April 5, 1999.

2.  I was terminated from Bayer Corporation on June 13, 2001.  At the time of my termination my position was Plant Controller at a salary of $71, 184.00 per year.

DEFENDANT'S
EXHIBIT
39
PENGAD-Bayonne, N.J.

000193

Page 2

3.  Shortly after I was hired during May, June and July of 1999 the Human Resources Manager, Don Telesca, made many comments to me about my looks and appearance and did so every time he would talk to me.  One day he put his arm around me.  In October of 2001, Chin Chen, a female who worked for me, told me that Don Telesca had invited her to dinner.

4.  In July of 1999, I first complained to my Supervisor, Richard Fuhrman, regarding Mr. Telesca's comments and behavior which was making me increasingly uncomfortable and upset.

5.  Mr. Telesca apologized to me and stopped the physical contact and he stopped making comments about my appearance.  However, from that day forward, he became hostile to me especially when we were in private.

6.  Richard Fuhrman and Don Telesca were good friends and socialized together.

7.  In December of 1999, Mr. Fuhrman wrongfully criticized me regarding a business trip reservation.  He put a severe reprimand letter in my personnel file on the recommendation of Mr. Telesca.  (Exhibit "A")

8.  The letter put in my personnel file contained inaccurate facts which I challenged.  (Exhibit "B").  Even though Mr. Fuhrman confirmed that my version of the facts were correct, he would not remove the damaging letter from my personnel file. (Exhibit "C").

9.  In December of 1999, I contacted the Corporate Ombudsman to report the retaliation from Mr. Fuhrman and Mr. Telesca and reported that I believed that I

was being retaliated against because of the sexual harassment complaint I had made six months earlier.

10. In January of 2000, the Corporate Human Resource Director, Stewart Redshaw, conducted an investigation and concluded that there was no retaliation. However, the decision was made to remove the reprimand letter from my personnel file in six months.

11. On January 26, 2000, Mr. Fuhrman put a warning note in my personnel file without notifying me about it. (Exhibit "D").

12. In February 2000, Mr. Fuhrman warned me not to contact the Corporate Ombudsman again in the future if there was any disagreement between us.

13. In June of 2000, after I requested that Mr. Telesca should correct an improperly written expense report, which was part of my job as Plant Comptroller, Mr. Fuhrman put yet another warning letter in my personnel file without notifying me of this action. This warning claimed that I was retaliating against Mr. Telesca by questioning his expense report. (Exhibit "E").

14. In August of 2000, at a management meeting, Mr. Telesca openly made a comment stating that I am nothing and that I don't count, holding me out to ridicule to the entire group.

15. In October of 2000, I requested a copy of my personnel file to review and discovered the two damaging notes that were put in my file by Mr. Fuhrman without my knowledge. (Exhibit "F"). I objected to this and brought the issue to Mr. Fuhrman's Supervisor, Peter Geise. In November of 2000, Corporate HR

Director Stewart Redshaw and Vice President of Business Plan and Controller Ray Newhouse again conducted an investigation.

16. In December of 2000, Mr. Geise told me that the investigation concluded that I was a highly ethical employee and did everything right for the company, however, only one of the notes was removed from my file.

17. In January of 2000, I was again held out to ridicule during a business meeting regarding the excellent business results that the company had achieved for the year 2000. One of the things that I had previously complained about was Mr. Telesca calling me Ms. America. In front of the group at the meeting, Mr. Telesca stated that "even Ms. America was claiming credit for the good business results". Corporate Human Resources had failed to do anything about my previous complaints and Mr. Telesca ridiculed and belittled me openly and at will. The hostile and demeaning treatment continued to upset me. I suffered two miscarriages during my employment at Bayer during this difficult time.

18. In April 2001, while conducting a performance review of an employee by the name of Chin Chen, she told me that she had misled me about her computer skills when I hired her and that she had never worked on a computer prior to working at Bayer. I had helped her during her application process at Bayer with her resume because she was Chinese like myself and her resume reflected her inability to convey her skills in English effectively.

000196

19. Chin Chen requested that I lay her off rather than try to learn the computer skills she needed to do her job properly.

20. I refused to lay her off and put her on a correction action plan. Chin Chen then went to Mr. Fuhrman and asked to be laid off. She made a ridiculous complaint to Mr. Fuhrman that I had poked her. She also told Mr. Fuhrman that I had told her to lie when she applied to Bayer Corporation and that I had changed the information on her resume. I told Mr. Fuhrman that she asked me to proof read and correct her resume, which I did based on the information she told me. She had intentionally lied to me about her skills in order to get the job be hired at Bayer Corporation. (Exhibit "G")

21. Mr. Fuhrman chose to believe these false accusations against me and took this as an opportunity to terminate me. (Exhibit "H"). I had no reason to hire an unskilled person into my department. It made no sense.

22. His real reason for terminating me was to retaliate against me for having complained to corporate about him and about Don Telesca.

I request the Connecticut Commission on Human Rights and Opportunities to investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy for which I may be entitled including reinstatement with back pay and any and all other remedies that I maybe entitled to.

Mei Rogus, being duly sworn states that she is the Complainant herein; that she has

000197

read the foregoing complaint and knows the contents thereof; and that to these matters she believes the same to be true.

Dated at Hartford, Connecticut this /3rd day of August, 2001.

Mei Rogus, Complainant

Subscribed and sworn to before me this /3 day of August 2001.

Notary Public
My Comm. Exp. 10/31/05

000198