UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2003 DEC 31 P 5:09
U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | | |
|---|---|---|
| MEI ROGUS,<br>　　　Plaintiff, | : | Civil Action No.<br>3:02CV1778(MRK) |
| v. | : | |
| BAYER CORPORATION,<br>　　　Defendant. | : | December 31, 2003 |

## LOCAL RULE 56(a) 2 STATEMENT

1. Admit.

2. Admit.

3. Admit the first sentence of paragraph "3", deny the remainder.

4. Admit.

5. Admit

6. Admit.

7. Admit.

8. Admit

9. Admit.

10. Admit.

11. Admit.

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

12. Admit first sentence in paragraph "12". Deny second sentence of paragraph "12".

13. Admit.

14. Admit.

15. Admit.

16. Admit.

17. Denied.

18. Admit the first sentence of paragraph "18". Deny the second sentence of paragraph "18".

19. Admit.

20. Admit first and second sentences of paragraph "20" but deny the third sentence of paragraph "20".

21. Denied.

22. Denied.

23. Deny first sentence of paragraph "23", admit the second sentence of paragraph "23".

24. Admit.

25. Denied.

26. Denied.

27. Admit.

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

28. Admit.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Admit.

34. Admit.

35. Deny first sentence of paragraph "35". Admit second and third sentences of paragraph "35".

36. Denied.

37. Denied.

38. Admit.

39. Denied.

40. Admit.

41. Admit except for the last sentence of paragraph "41" which is denied.

42. Denied.

43. Admit the first and fourth sentences of paragraph "43" but deny the second and third sentences of paragraph "43".

44. Denied.

45. Admit.

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

46. Admit the first, second and third sentences of paragraph "46". Deny the fourth sentence of paragraph "46".

47. Admit.

48. Denied.

49. Admit.

50. Denied.

51. Admit the first sentence of paragraph "51", deny the remainder of paragraph "51".

52. Admit the first, second and third sentences of paragraph "52". Deny the fourth sentence of paragraph "52".

53. Deny the second and third sentences of paragraph "53".

54. Denied.

55. Admit.

56. Admit.

57. Admit.

58. Denied.

59. Admit the first sentence of paragraph "59" but deny the second, third and fourth sentences of paragraph "59".

60. Admit.

61. Deny the first, third and fourth sentences of paragraph "61" but admit the second sentence of paragraph "61".

Page 4 of 15

Robert B. Muchinsky, Attorney At Law * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

62.  Denied.

63.  Admit.

## Disputed Issues of Material Fact

The following are those facts stated by the defendant in its local Rule 56(a) 1 Statement that have been denied by the Plaintiff in its Local Rule 56(a) 2 Statement. Those numbered paragraphs correspond to the numbered paragraphs that have been set out in Defendant's Local Rule 56(a) 1 Statement and denied in Plaintiff's Local Rule 56(a) 2 Statement.

3.  Bayer is a publicly traded company. Bayer AG is listed and traded on the New York Stock Exchange, symbol BAY. (Affidavit of Mei Rogus ¶ 5).

12. The incident at the computer where Mr. Telesca put his arm around Mei Rogus' shoulders and pulled her into his body was not the only time he had touched her. The plaintiff recalls another time when they were reviewing a humorous videotape at work, Mr. Telesca reached over and touched her stomach. (Rogus affidavit ¶ 10).

17. The plaintiff did not countermand Mr. Fuhrman's directive about a business trip in December of 1999. Plaintiff followed Mr. Fuhrman's directions completely. (Rogus Affidavit ¶ 6). Plaintiff did not lie to Mr. Fuhrman. Mr. Fuhrman was aware of that. Page 3 of Exhibit "9" to the Plaintiff's Deposition, Fuhrman's December 10, 1999 note states, "I asked Helen whether Mei had told her that I approved both of them going. She said that I had approved one of them and that on Friday, it was going to be Mei and on Monday she was informed that she

Page 5 of 15

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

would be going." Mr. Fuhrman knew that the Plaintiff had not lied about the business trip. Although Mr. Fuhrman knew of this he still went forward and put the damaging letter in the Plaintiff's personnel file. (Defendant's Exhibit "9" to Mei Rogus' Deposition). Fuhrman's note regarding Plaintiff in his meeting of December 10, 1999 (Defendant's Exhibit "9" to Rogus Deposition at page 3) states in the second paragraph, "I told Mei that the letter would stand and a response would be attached to the letter and both placed in the file. I told her that if there were no other infractions of this type for six months both would be removed from her file." Mr. Fuhrman agreed that after six months the disciplinary letter and her rebuttal would be removed from the file and that was Plaintiff's belief. (Rogus Deposition 69-74).

20.  Plaintiff elected to have the insubordination letter removed in six months as was offered by Mr. Fuhrman and memorialized in his December 10, 1999 memorandum. (Defendant's Exhibit "9" at page 3 and Rogus Deposition 70-74).

21.  Fuhrman did not comply with Redshaw's recommendation to replace the insubordination reprimand letter with a hand written note of counseling. On the handwritten note (Rogus Deposition, Defendant's Exhibit "11"), Mr. Fuhrman attached another note stating "Don please put this document in Mei's file and return the insubordination letter to me, Rich".

22.  Plaintiff did suffer an adverse employment consequence. Because of her pleas to the Corporate Ombudsman for fair treatment, she was ultimately terminated. (Rogus Affidavit ¶ 24).

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

23.  In February of 2000, Mr. Fuhrman told the plaintiff that with so many production employees having contacted the Ombudsman complaining about so many issues, that it did not look good for him and since Plaintiff is a member of the management team it did not reflect well on him that Plaintiff contacted the Corporate Ombudsman. (Rogus Deposition 78).

25.  Fuhrman put another note in plaintiff's file on July 27, 2000 regarding an incident that took place before June 22, 2000. (Fuhrman Deposition 17, Exhibit "7"). The Plaintiff had already discussed the incident with Harry Kilvanick via email on June 22nd and 23rd. (Fuhrman Deposition, Exhibit "6"). Harry Kilvanick is the Corporate Controller. (Fuhrman Deposition 16). Although the Corporate Controller had approved the Plaintiff's methodology in dealing with expense reports and receipts, (Fuhrman Exhibit "6") Mr. Fuhrman still felt the need to put a note in plaintiff's file without informing the plaintiff. (Fuhrman Deposition 17-18). Mr. Fuhrman had looked at the expense reports of others and found no unequal treatment. (Rogus Affidavit ¶ 7).

26.  Plaintiff found the July 27, 2000 note long with the January 2000 note (Fuhrman Deposition, Exhibit "5") in October 2000 when she was going through her personnel file. (Rogus Deposition 80).

29.  The investigation regarding the July 2000 note uncovered several other requests from Mr. Fuhrman, Peter Geise and Donald Telesca to circumvent procedures, which Plaintiff believes gave Mr. Fuhrman and Mr. Telesca additional reasons for retaliating against her. (Rogus Affidavit at ¶ 8).

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

30. Plaintiff belief that the reprimanding counseling letters were retaliatory, is based upon more than she just believed that Mr. Telesca was involved with them. Mr. Fuhrman told her that Mr. Telesca had endorsed issuing the reprimand letter. Defendant's Exhibit "9", Rogus Deposition, at page 3 states in the first paragraph "She asked whether Don endorsed issuing such serious letter. I replied that he had." Page 3 of Exhibit "9" is a typed note by Richard Fuhrman dated 12/10/99. While Mr. Fuhrman never criticized plaintiff openly for her complaint, Plaintiff believed that Mr. Fuhrman was on a witch-hunt looking for ridiculous reasons to write her up and put notes in her file without her knowledge. (Rogus Deposition 96).

31. The August 2000 business meeting where Mr. Telesca stated, "Mei you don't count". (Rogus Deposition 54, 56-58) took place only a few days after Mr. Fuhrman had placed the July 2000 warning note in Plaintiff's personnel file without her knowledge. (Rogus affidavit ¶ 9).

32. Mr. Telesca and Mr. Fuhrman taunted the Plaintiff at a business meeting in Jnuary of 2001 in front of the management staff (Defendant's Exhibit "5"). Mr. Telesca and Mr. Fuhrman knew what the reference to "Ms. America" meant and how it affected Plaintiff. (Rogus Deposition 54, 56).

35. Plaintiff denies that she substantially enhanced the resume Chin Chen, of an applicant for an Accountant 1 position. (Rogus Deposition 102).

36. Chin Chen was initially rejected but begged the Plaintiff for one more chance. (Chin Deposition at page 29).

Page 8 of 15

Robert B. Muchinsky, Attorney At Law * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

36. Plaintiff did not want to hire the other candidate because the other candidate did not have an accounting education. (Rogus Deposition 187).

37. Plaintiff never discussed her problems with Don Telesca regarding sexual harassment with Chin Chen. Chin Chen told Plaintiff in October of 2000 that Cliff Chen had told her everything about Mr. Telesca and his harassment of the Plaintiff. (Rogus Affidavit ¶ 11). Mr. Telesca and Mr. Fuhrman did want to hire another candidate, someone they both knew, however, that person did not have an accounting education and had never done inventory control and Plaintiff did not feel she was qualified or suitable for the job. (Rogus Deposition 187).

39. Plaintiff provided Chin Chen during the interview process a list of the standard interview questions that would be asked of her and she explained them in Chinese and English so that Chin Chen fully understood the terms. (Rogus Deposition 111-112). Plaintiff thought no one will ever hire Orientals unless someone gives them a chance. (Fuhrman Deposition 28).

41. Plaintiff did not insert the words "strong organizational or managerial skills" into Chin's resume but suggested that the phrase "have demonstrated excellent attention to detail organization and management," found at bullet #2 in Defendant's Exhibit "22" to the Rogus Deposition, be changed to "excellent attention to detail," found in bullet #3 of Defendant's Exhibit "23", and "strong organizational and management skills," found in bullet #4 of Defendant's Exhibit "23" instead of "have demonstrated excellent... organization and management" from bullet #2 in Exhibit "22". (Rogus Deposition, 115-116).

Page 9 of 15

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

42.  Plaintiff did recall discussing Chin's qualifications with her before suggesting that anything be changed on her resume. Plaintiff talked to Chin and Cliff Chen about Chin's qualifications. (Rogus Deposition 113-116).

43.  The computer applications listed in Plaintiff's suggested revisions were examples of computer applications. Plaintiff had asked Chin Chen to list any applications that she knew. (Rogus Deposition 115, Defendant's Exhibit "23"). Chin Chen stated that she made the change on her resume from Shu Kung Girls School to Shu Kung Commercial School. (Chin Depostion 25). At the CHRO Fact-finding Chin Chen stated that Cliff Chen made the changes in her final resume. (Rogus Affidavit at ¶ 17).

44.  Chin Chen sent Plaintiff a draft of her thank you note. She wanted the job so badly she wanted to make everything as perfect as she could. Plaintiff only made some minor suggestions such as a comma and period to the letter. (Rogus Deposition 124, Exhibit "26"). (Rogus affidavit ¶ 16). Chin stated that the Plaintiff asked her to make a thank you note and send it to Mr. Telesca and Mr. Fuhrman. (Chin Chen Deposition 27-28).

46.  Plaintiff inquired of Chin Chen and Cliff Chen as to the level of Chin Chen's computer skills and was told that her computer skills were "horse-horse, tiger-tiger". (Rogus Deposition 122). This is a Chinese expression that in American can be translated into "so-so" (Rogus Deposition 123). However, in the Chinese culture, the way people express themselves if they know something well, and are asked how well do you know the subject, they usually say its "horse-horse, tiger-tiger". It's a humble way of expressing oneself. (Rogus Deposition 123).

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

Defendant's Exhibits "31" and "34" to Rogus Deposition state that Chin Chen stated emphatically that she told Mei she was not good with the computer and Mei said don't worry about it. (Rogus Deposition 165, 202-203).

48. Chin Chen went to Mr. Fuhrman and asked to be laid-off after Plaintiff declined to lay her off. (Rogus Deposition 145-146) and after Plaintiff had outlined areas of Chin Chen's performance that needed improvement (first page of Defendant's Exhibit "28"). Chin Chen did make a complaint to Mr. Fuhrman about the Plaintiff poking her, however at the CHRO Fact-finding Conference Chin did not know the difference between poking and pointing. (Rogus affidavit ¶ 18).

50. Plaintiff denies that she ever physically touched or poked Chin Chen (Defendant's Exhibit "30", Rogus Affidavit ¶ 18). Cliff Chen had told Plaintiff that Chin Chen's computer expertise was horse-horse, tiger-tiger or so-so. (Rogus Deposition 122-123). During her interview Chin Chen told Plaintiff that she had taken computer classes the Ziao-Tung University, which is a reputable university in Taiwan, and known for its expertise in computers and information technology. (Rogus Affidavit ¶ 13). In April of 2001 Chin Chen told Plaintiff that she never touched a computer. (Rogus Deposition 164). Chin Chen told Plaintiff in April 2001 that Cliff Chen had told her to lie regarding her computer skills in order to get a job at Bayer. (Rogus Affidavit ¶ 14).

51. Chin Chen gave Mr. Fuhrman Plaintiff's email suggesting changes to Chin Chen's resume. (Fuhrman Deposition 31). The email given to Mr. Fuhrman did not contain the

Page 11 of 15

Robert B. Muchinsky, Attorney At Law  * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

icon that alerts one to an attachment. (Rogus Affidavit ¶ 19). Mr. Fuhrman then compared the final resume to Chin Chen's original resume without the benefit of seeing the suggested changes. (Chin Chen Deposition 57-61). Plaintiff was suspended, however, she explained to the investigator, Denise Church Ball, that Mr. Telesca and Mr. Fuhrman had been on a witch hunt to get rid of her for two years in retaliation against her and that she wanted to make sure that the investigation would be unbiased. Church Ball promised her an opportunity to present her side of the story, however, that never happened. (Rogus Deposition 162).

53. Plaintiff did not want to get Cliff Chen involved because he was in a very fragile condition and she was concerned that if Mr. Chen was brought into the investigation his medical condition might worsen and might even kill him. (Rogus Deposition 136-137). She was also concerned about his long-term disability benefits. However, Cliff Chen's name had already been brought into the investigation. (Rogus Deposition 136-137). Mr. Fuhrman represented to Chin Chen that the investigation was still on-gong on Monday June 11, 2003 following the Friday June 8th meeting. (Chin Chen Deposition 44-45). Plaintiff's email had already been taken down from the system on Monday morning following the June 8th meetings. (Chin Chen Deposition 45-46).

58. While Fuhrman was the person who had directed the Plaintiff to investigate the reason for the variances, he did not support her efforts to resolve the variance problem. (Rogus Deposition 179). Production Manager, Tim Conway, told one of his production employees who

Page 12 of 15

Robert B. Muchinsky, Attorney At Law * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

was trying to help Plaintiff identify the variance resin problem not to discuss it with her any more. (Rogus Deposition 178-179) (Jewczyn Affidavit ¶ 8).

59.  The difference in raw materials that were purchased and the raw materials, which were used and are a cost of production had not been traditionally charged as an expense. (Rogus Deposition 181-183). It had been improperly charged as an expense. (Rogus Deposition 181-183). When Fuhrman was Plant Manager and while the Plaintiff was Plant Controller, Mr. Fuhrman did not authorize a correct charge off to scrap resin to reduce the percentage of production yield. The first time it was done properly was after the audit from Bayer's Headquarters in Pittsburgh following the Plaintiff's complaint in July of 2001. (Rogus Affidavit ¶ 22).

60.  Mr. Fuhrman participated in a bonus program. He had been going through a lot of employee relations' problems. (Rogus Deposition 183, Cruz Affidavit ¶ 9). Mr. Fuhrman was going through a leadership crisis at the Berlin site and if yields were reduced his management bonus might have been affected. (Rogus Deposition 186).

61.  Chris Hamilton was the Senior Procurement Coordinator at Bayer's Berlin site (Rogus Deposition 179, Rogus Affidavit ¶ 23, Hamilton Deposition 4). Plaintiff told Mr. Hamilton that the source of the variance was the underreporting of scrap by production employees. (Rogus Deposition 176, 178).

Page 13 of 15

Robert B. Muchinsky, Attorney At Law * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

62.    Memorandums were published in Plaintiff's personnel file defaming Plaintiff, including Defendant's Exhibits "9", "11" "12", "18", "29" and "31".

By: _____
ROBERT B. MUCHINSKY
39 Russ Street
Hartford, CT 06106
Federal Bar No.: ct 12702
Telephone: 860-297-0037
Facsimile: 860-297-0040

Page 14 of 15

Robert B. Muchinsky, Attorney At Law * Juris 101514
39 Russ Street Hartford, CT 06106 * Tel: 860-297-0037 * Fax: 860-297-0040

## Certification

I hereby certify that a copy of the foregoing has been mailed postage prepaid to the following counsel and pro se parties of record on December 31, 2003.

**The Defendant**

John J. Myers, Esq.
Federal Bar No. ct11377
Eckert, Seamans, Cherin & Mellott
600 Grand Street – 44th Floor
Pittsburgh, PA  15222

Christopher Brigham, Esq.
Federal Bar No. ct02761
Updike, Kelly & Spellacy, PC
PO Box 231277
One State Street
Hartford, CT  06123-1277

**Filing Location**

Clerk of Court
United States District Court
141 Church Street
New Haven, CT  06510

_____
Robert B. Muchinsky

Robert B. Muchinsky, Attorney at Law * Juris No. 101514
39 Russ Street, Hartford, CT  06106 * Telephone: (860) 297-0037 * Facsimile (860) 297-004