IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MEI ROGUS, | ) | CIVIL ACTION |
| | ) | No.  3: 02 CV 1778 (MRK) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BAYER CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | JANUARY 20, 2004 |

**DEFENDANT'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant submits the following Reply Brief to address plaintiff's arguments in opposition to defendant's motion for summary judgment.

   *1.     Wrongful Discharge in Violation of Public Policy*

In defendant's motion and brief, it was shown that the Connecticut cases have not permitted public-policy-based wrongful discharge suits where there is a statutory remedy for the kind of activity on which the plaintiff relies as protecting him or her from discharge, even if the plaintiff cannot establish a claim under that statute.  (See Defendant's Memorandum of Law at 16-19)  In the present case, it was argued, the existence of a statute protecting certain employee whistleblowers from retaliatory discharge (i.e., Conn. Gen. Stat. § 31-51m) occupies the field, such that whistleblowers whose reports are not protected by that statute cannot assert a claim in tort for discharge in violation of public policy.

350764

One of the several cases cited by defendant in support of this argument is the decision of this Court in *Lowe v. Amerigas, Inc.*, 52 F. Supp. 2d 349, aff'd 208 F. 3d 203 (2d Cir. 2000). Plaintiff argues that *Lowe* is inapplicable because the plaintiff was asserting a claim under Section 31-51m, which he could not establish because he did not report the employer's conduct to a public body. (Plaintiff's Memorandum of Law at page 19) This attempt to distinguish *Lowe* is incorrect. The plaintiff in *Lowe* attempted to assert a claim, not only directly under Section 31-51m, but also for wrongful discharge in violation of public policy, in that he allegedly was discharged for reporting safety and inventory control violations. This court held, at page 359, that plaintiff could not maintain a public policy claim because of the remedy afforded to whistleblowers under Section 31-51m, even though, as the Court later held in the same opinion, plaintiff could not satisfy the requirements of a claim under Section 31-51m because he had not reported the matter to a public body. Plaintiff also attempts to distinguish the decision of the Connecticut Supreme Court in *Burnham v. Karl and Gelb, P.C.*, 252 Conn. 153, 745 A.2d 178 (2000), by contending that the Supreme Court based its decision that plaintiff could not maintain a public policy claim on the availability of a remedy under a federal statute. This is not correct. The Court specifically stated that "plaintiff's common-law wrongful discharge claim would be precluded by § 31-51m (c), which provides a statutory remedy for employer conduct prohibited under §31-51m (b)." *Id*. at 158, 745 A.2d at 182. This preclusion was found even though, as later held in the same case, the plaintiff could not establish a claim under Section 31-51m because she had not reported the matter to a public body.

Finally, plaintiff cites the seminal case of *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980) as a case which "closely resembles" the present case. In *Sheets*, the Court held that discharging an employee for his efforts to convince his employer to comply with the labeling requirements of the Food, Drug and Cosmetic Act, where the employee could have been subjected to criminal prosecution had he not called the violations to his employer's attention. The complete answer to plaintiff's attempted analogy is that Section 31-51m was not enacted until 1982, two years after *Sheets* was decided. 1982, P.A. 82-289, §1.

In sum, plaintiff has not and cannot satisfactorily distinguish the cases which establish that the existence of a statute which protects certain reports of misconduct by employers precludes employees who cannot sustain a claim under that statute from circumventing its limitations by appealing to public policy. Those limitations are themselves an expression of public policy.

    **2.**    ***Sexual Harassment Claim***

In its motion and brief, defendant established that the sexual remarks about which the plaintiff complained are insufficient as a matter of law to constitute an adverse employment action; i.e., they were not sufficiently severe and pervasive as to alter the terms and conditions of her employment. In response, plaintiff relies on the finding of defendant's human resources director, who, after an investigation of the plaintiff's complaint, concluded that "Telesca's comments to Mei could be regarded as marginally falling under the third paragraph of the Bayer definition of sexual harassment …" (Plaintiff's Memorandum of Law at 23-24)

Plaintiff is not suing Bayer for violation of its sexual harassment policy. Instead, she has claimed a violation of the Connecticut Fair Employment Practices Act. The case law cited by defendant in its Memorandum of Law, pages 21-23, shows that the plaintiff cannot satisfy the elements of that law. Furthermore, plaintiff has not even addressed defendant's argument that there can be no employer liability for the alleged co-worker harassment because defendant provided plaintiff with a reasonable avenue for complaint and it took appropriate action to stop the alleged misconduct as soon as it had reason to know of it. *Brittell v. Department of Correction*, 247 Conn. 148, 167-68, 717 A.2d 1254, 1265-66 (1998).

Summary judgment on the plaintiff's claim of sexual harassment is, therefore, warranted based upon the law and arguments made in defendant's principal brief.

    *3.    Retaliation*

Plaintiff does not answer the argument of the defendant that the several incidents of write ups and comments which occurred in the two years after plaintiff complained of sexual harassment do not amount to adverse employment actions. See Defendant's Memorandum of Law at pages 25-27) Nor does the plaintiff address the legal authorities cited by defendant in support of its argument. Instead, plaintiff limits her retaliation claim to her contention that she was discharged in retaliation for making a complaint of sexual harassment. See Plaintiff's Memorandum of Law at pages 25-29.

Plaintiff contends that "there is a temporal nexus between the alleged acts of retaliation against the plaintiff and her discharge." (Plaintiff's Memorandum of Law at page 28) To support this statement, plaintiff cites the case of *Robin v. Expo Engineering Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000). There is no apparent reason to refer to this case. It did not involve a claim of retaliation

and, furthermore, the part of the opinion specifically referenced by plaintiff held that discriminatory remarks made two years before the plaintiff's discharge were too remote in time to serve as evidence of a discriminatory motive for the discharge.  200 F.3d at 1089.  Similarly, the other case cited by plaintiff, *Danzer v. Noden System, Inc*., 151 F.3d 50, 56 (2d 1998) seems out of place, in that it does not involve a retaliation claim and held only that biased remarks are not lacking in probative value because they were made well over a year before the discharge.  Neither case has any bearing on whether the temporal relationship between plaintiff's complaint of sexual harassment and her discharge is sufficient, by itself, to satisfy the causation element of a *prima facie* case.

In the present case, plaintiff's protected activity predated her discharge by nearly two years, which is too remote in time to support any inference of causation.  The Supreme Court, in *Clark County School District v. Breedan*, 532 U.S. 268, 273-74 (2001) held that action taken twenty months after the protected activity "suggests, by itself, no causality at all."  The Court stated that the temporal proximity between protected activity and an adverse employment action must be "very close" to establish the causation element of a prima facie case of retaliation, citing*, Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (10th Cir. 1997)(3-month period); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir. 1992)(4-month period).

Nor were the circumstances of plaintiff's discharge suggestive in any way of a retaliatory motivation.  She was discharged in connection with the revelation that she had assisted a job applicant in creating a false resume; a revelation which was brought about by the actions of the plaintiff herself and the clerical employee whose resume was at issue.  Telesca, the subject of

plaintiff's report of harassment, was not even employed by defendant when these events occurred, having been discharged by Mr. Fuhrman.

The several incidents about which the plaintiff complains and which occurred during the two-year period are unrelated events—to each other and to the sexual harassment complaint. Futhermore, plaintiff does not explain why Fuhrman, who conducted the investigation and took action against Telesca, would harbor any retaliatory motive for the complaint. In sum, plaintiff has not offered any evidence probative of a causal connection between her sexual harassment complaint and her discharge. Summary judgment should, therefore, be granted on the retaliation claim for this reason.

As an alternative, independently sufficient, ground for summary judgment on plaintiff's retaliatory discharge claim, defendant argued that plaintiff could not produced evidence which would permit a jury to conclude that defendant's reason for her discharge was a pretext for retaliation. In response, plaintiff makes two points. First, she questions why she would hire someone to be her direct report who had no skills and would not be able to do the job. (Plaintiff's Memorandum of Law at page 29) According to Chin Chen, the plaintiff told her she wanted to hire someone who would side with her in her disputes with Telesca. The plaintiff also testified that she wanted to help Chin Chen because it is difficult for Taiwanese natives to find employment because of language and cultural differences. Whatever her motives, it is not disputed that the plaintiff did in fact try to help Chin Chen get the job; that the plaintiff did in fact make changes to Chin Chen's resume, which changes falsified Chin Chen's credentials; and that management learned of these events shortly before the plaintiff was discharged. While plaintiff claims that she was lied to by Chin Chen, she did admit in her testimony that she has no recollection of ever having spoken with Chin Chen before

adding the computer skills to her resume. (Rogus Dep. 117) The computer applications which plaintiff added happened to coincide exactly with the computer skills which the written job description required. (Rogus Dep. Exh. 20)

Plaintiff's second argument is that she was not given an opportunity to explain or to see the evidence before being discharged. (Plaintiff's Memorandum of Law at page 30) She was, however, confronted with the accusation and given a chance to explain at the two meetings before her discharge, one in the presence of Chin Chen and the other without Chin Chen being present. Furthermore, in those meetings she would not disclose to management the name of the go-between, Cliff Chen.[1] With the documented evidence in the possession of management, the fact that it chose not to conduct a further investigation or to permit the plaintiff another opportunity to respond does not tend to prove that management acted for any reason other than its belief that plaintiff had assisted the employee to falsify her resume. In short, the absence of due process procedures does not establish pretext.

### 4. *Intentional Infliction of Emotional Distress*

Plaintiff has expressly abandoned this claim

### 5. *Defamation*

Plaintiff does not dispute that the intra-company communications and discharge letter on which she bases her claims of defamation were privileged communications. She contests defendant's

---

[1] In her fact statement and deposition, plaintiff claims that she was trying to protect Cliff Chen, who was on disability leave from Bayer, and also claimed that his name had already surfaced in the investigation. See Plaintiff's Local Rule 56 (a)(2) Statement ¶ 53. There is no evidence of when or how this disclosure occurred. In any case, plaintiff's attempt to protect Cliff Chen's identity, for whatever reason, indicates a lack of cooperation in the investigation.

motion for summary judgment on her defamation claim instead by contending that whether a defendant has abused a conditional privilege is a question of fact for the jury, citing *Bleich v. Ortiz*, 196 Conn. 498, 501, 493 A. 2d 236 (1995).  While that may be true, as a general proposition, plaintiff nevertheless must show that she has evidence from which a reasonable jury could infer malice or abuse of the privilege to withstand summary judgment; i.e., evidence that defendant did not believe or have reason to believe that the allegedly false statements about the plaintiff were true.  *Torosyan v. Boehringer Ingleheim Pharmaceuticals, Inc.,* 234 Conn. 1, 29, 662 A.2d 89, 104 (1995); *Malik v. Carrier Corp*, 202 F.3d 97, 108 (2d Cir. 2000).

While the plaintiff argues in her brief that the defamation which is at issue consists of the two disciplinary letters in her file, that is not what she has alleged in her complaint, nor is it what she testified to in her deposition.  (Complaint ¶ 17; Rogus Dep. 189-93)  Instead, her allegation of defamatory statements were that she was accused of falsification of company documents, battering another employee and lying.

As discussed at length in defendant's original Memorandum of Law, it had substantial documentary evidence and testimonial evidence that the plaintiff had helped to falsify the resume of Chin Chen.  Plaintiff, on the other hand, has offered no evidence from which a jury could conclude that defendant did not believe this accusation to be true or have reason to believe it to be true.  The only person who accused the plaintiff of having committed a "battery" is Chin Chen.  There is no evidence of a publication of this accusation by defendant, except to inform the plaintiff of the accusation.  Finally, plaintiff has admitted that she has no evidence of a publication of the statement

that plaintiff had lied, except to herself. Under the cases cited in defendant's Memorandum of Law, that is not an actionable publication.

## CONCLUSION

Defendant requests that its motion for summary judgment be granted as to all counts of the plaintiff's complaint.

                                                        Respectfully submitted,

                                                        DEFENDANT,
                                                        BAYER CORPORATION

By:    /S/ Christopher L. Brigham, Esq.
          CHRISTOPHER L. BRIGHAM, ESQ.
          Federal Bar Number ct 12410
          Updike, Kelly & Spellacy, P.C.
          265 Church Street, 10th Floor
          New Haven, CT  06510
          Telephone:  (203) 786-8300
          Facsimile:  (203) 772-2037
          Email:  cbrigham@uks.com

               John J. Myers
               Federal Bar No. ct11377
               Eckert Seamans Cherin & Mellott, LLC
               44th Floor, 600 Grant Street
               Pittsburgh, PA  15222
               Telephone:   (412) 566-5900
               Facsimile:  (412) 566-6099
               Email:  jjm@escm.com

               Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I, Christopher L. Brigham, attorney for the defendant, Bayer Corporation, in the above-captioned action, hereby certify that on January 20, 2004, a copy of the foregoing **REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was filed electronically and served via facsimile to counsel as follows:

> Robert B. Muchinsky, Esq.
> 39 Russ Street
> Hartford, CT 06106
> Facsimile: (860) 297-0040
> Telephone: (860) 297-0037

By: /S/ Christopher L. Brigham, Esq.
CHRISTOPHER L. BRIGHAM, ESQ.
Federal Bar Number ct 12410
Updike, Kelly & Spellacy, P.C.
265 Church Street, 10th Floor
New Haven, CT 06510
Telephone: (203) 786-8300
Facsimile: (203) 772-2037
Email: cbrigham@uks.com

350764